UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DEEANN SANDERS,     Plaintiff,

v.     Civil Action No. 3:15-cv-269-DJH-DW

CITY OF HODGENVILLE,
KENTUCKY, et al.,     Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Deeann Sanders initiated a late-night encounter with police officers at the scene of her husband's DUI arrest, which was very near her home in Hodgenville, Kentucky. (*See* Docket No. 1-2) A police car dashcam recorded the incident, and police later released the video to the media. (*See id.*) Sanders sued the City of Hodgenville and former Hodgenville Chief of Police Steven Johnson, alleging violations of state law and seeking relief under 42 U.S.C. § 1983 for violations of her constitutional rights. (*Id.*) Defendants have moved for summary judgment, arguing that there are no genuine issues of material fact remaining. (D.N. 35) The Court agrees. Because Sanders has not established that Defendants violated her constitutional rights, her § 1983 claim fails as a matter of law. The Court will therefore grant in part Defendants' motion for summary judgment and decline to exercise supplemental jurisdiction over Sanders's remaining state-law claims pursuant to 28 U.S.C. § 1367.

### I.     Background

On March 29, 2014, Sanders's husband Sam Sanders was driving to his residence after watching a basketball game at his father-in-law's house. (D.N. 46, PageID # 487) At the time, Sam Sanders served as the superintendent of the school system of LaRue County, Kentucky, in which Hodgenville is located. Within yards of his residence, Hodgenville Police Officer James

1

Richardson pulled over Sam Sanders on suspicion of driving under the influence. (D.N. 1-2, PageID # 7) The stop occurred on a public roadway. (*See* D.N. 35-3) A second officer arrived at the scene, and after conducting field-sobriety tests, the officers placed Sam Sanders under arrest. (D.N. 35-6) At some point, the dashboard camera in Richardson's squad car began recording.

Shortly thereafter, Deeann Sanders arrived at the scene. Sanders wore a white housecoat that rested slightly above knee level, a nightgown underneath, and tennis shoes. (D.N. 46, PageID # 495) The arresting officers later described Sanders as "upset . . . and condescending" during the encounter. (D.N. 35-6, PageID # 162; *see also* D.N. 35-5) The dashboard camera in Richardson's car captured the entire interaction with Deeann Sanders. (*See* D.N. 35-7)

Thereafter, Richardson drove Sam Sanders to the police station for booking procedures. (D.N. 35-6, PageID # 162) Meanwhile, Deeann Sanders went to the home of Terry Cruse, Hodgenville's mayor at the time. (D.N. 35-9, PageID # 175) Cruse, who was asleep, awoke to the sound of "someone beating on [his] back door." (*Id.*, PageID # 175) When he opened the door, he found Deeann Sanders, who asked him "to personally go down to tell the police officers to let her husband go." (*Id.*) Cruse declined. Sanders then arrived at the police station, asked to speak with her husband, and eventually called the LaRue County District Court Judge to inform him of the evening's events. (D.N. 46, PageID # 511, 514) Richardson activated his body camera during the incident. (*See* D.N. 35-11) The video shows Deeann Sanders repeatedly knocking on the station's door and interrupting the officers during booking. (*Id.*)

The next day, Madonna Hornback, who then served as Hodgenville's City Clerk, allegedly received several media requests for the dashcam recording that captured Sam Sanders's arrest. (D.N. 35-14, PageID # 214) She referred the media to Hodgenville Chief of Police

Steven Johnson and wrongly informed Johnson that the city must comply with the requests in light of Kentucky's Open-Records Act, Ky. Rev. Stat. § 61.870 *et seq*. (*Id*.) Thereafter, Johnson raised the matter with Mayor Cruse, who told Johnson "to comply with the open records laws just as he would with anyone else and to handle it." (D.N. 35-9, PageID # 176) Johnson then invited the media to view the recording and allowed one cameraman to film the video as it played on a television monitor. Media outlets eventually aired the dashcam video on broadcast television.[1] (*See* D.N. 1-2, PageID # 8)

In fact, Johnson may have violated state law by releasing the video. An exception to the Open-Records Act, § 189A.100(2)(e), provides that video recordings of DUI arrests "shall be used for official purposes only." Any public official or employee who fails to comply with § 189A.100 "shall be guilty of official misconduct in the first degree." Ky. Rev. Stat. § 189A.100(3).

In light of § 189A.100, Sam and Deeann Sanders reported Johnson's actions to the Kentucky State Police. (*See* D.N. 35-16) The Commonwealth eventually charged Johnson with official misconduct in the first and second degree for his release to the media of the dashcam recording. (*See* D.N. 35-17) A LaRue County jury acquitted Johnson of all charges. (D.N. 35-14, PageID # 225)

---

[1] Throughout her pleadings, Sanders insinuates that there are material issues of fact regarding whether the media cited the open-records law during their inquiries to the city and whether it was in fact Cruse, Hornback, or Johnson who contacted the media in the first place. (*See, e.g.*, D.N. 44, PageID # 300–03) Neither question is dispositive to the Court's eventual conclusion, however. First, regardless of whether the media actually cited Kentucky's open records law in their requests, the evidence indicates that the city officials believed, albeit wrongfully, that the law was at issue. Sanders does not challenge Hornback's contention that she told Johnson that the media's requests were covered by the Open-Records Act. Nor does Sanders challenge Mayor Cruse's claim that he told Johnson to comply with the media requests pursuant to the Open-Records Act. Finally, Sanders provides no affirmative proof to show that any of the public officials contacted the media first.

Thereafter, Deeann Sanders brought this action against the City of Hodgenville and Johnson. (D.N. 1-2) Sanders contends that Defendants violated various state laws as well as her constitutional rights by releasing the recording to the media. (*See id.*) Specifically, she claims that the release of the recording caused her "great humiliation, embarrassment, mental anguish, mental and emotional pain and suffering, and damages to her reputation and character." (*Id.*, PageID # 8) Defendants have moved for summary judgment.[2] (D.N. 35)

## II. Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may do so by merely showing that the nonmoving party lacks evidence to support an essential element of its case for which it has the burden of proof. *See id.*

If the moving party satisfies this burden, the nonmoving party must point to specific facts in the record demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of its claims. *Celotex Corp.*, 477 U.S. at 323 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

---

[2] The Court has omitted certain background information that Sanders provided concerning corruption among LaRue County public officials, which is unnecessary to the Court's analysis. (*See* D.N. 44, PageID # 304–05)

The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient; instead, the nonmoving party must present evidence upon which the jury could reasonably find for it. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (citing *Anderson*, 477 U.S. at 252). This "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255).

### III. Discussion

The sole basis for federal jurisdiction in this matter is Sanders's § 1983 claim. Specifically, Sanders asserts a failure-to-train claim pursuant to § 1983. (D.N. 1-2, PageID # 10) "Inadequate training can serve as the basis for municipal liability under § 1983 where it 'amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Roell v. Hamilton Cty., Ohio/Hamilton Cty. Bd. of Cty. Comm'rs*, 870 F.3d 471, 487 (6th Cir. 2017) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). However, as a threshold matter, to properly assert a § 1983 claim "[a] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Sanders's complaint does not mention which specific constitutional provisions are at issue but her response brief asserts that Defendants violated her "Fifth Amendment rights to due

5

process of law, and her equal protection of the laws with other citizens similarly situated." (D.N. 44, PageID # 318) "[T]h[e] [Fifth Amendment] constrains the power of the Federal Government to deprive any person 'of life, liberty, or property, without due process of law,' [whereas] the Fourteenth Amendment imposes comparable constraints on the power of the States." *United States v. Balsys*, 524 U.S. 666, 700 (1998) (Stevens, J., concurring). Although inartfully pleaded, the Court will construe Sanders's alleged constitutional violation as arising under the Fourteenth Amendment's Due Process Clause. *See Scott v. Clay Cty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000). As explained below, however, Sanders has not demonstrated that Defendants violated her Fourteenth Amendment rights to equal protection and due process.

**a. Equal Protection Clause**

The Fourteenth Amendment's Equal Protection Clause "safeguards against the disparate treatment of similarly situated individuals as a result of government action that either burdens a fundamental right, targets a suspect class, or has no rational basis." *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 649 (6th Cir. 2015). Sanders has not alleged that Defendants' action burdened a fundamental right or targeted a suspect class. (*See* D.N. 1-2) At most, Sanders presents a "class-of-one" claim premised on the theory that Defendants, due to animus, treated her differently than similarly situated individuals. (*See* D.N. 44, PageID # 318) "Equal protection claims can be brought by a 'class of one,' where the plaintiff alleges that the government treated [her] differently from others similarly situated and that there is no rational basis for such difference in treatment." *Fulkerson v. Lynch*, 261 F. Supp. 3d 779, 788 (W.D. Ky. 2017) (citing *Warren v. City of Athens, Ohio*, 411 F.3d 697, 710–11 (6th Cir. 2005)); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Sanders's class-of-one claim fails as a matter of law, however. First, Sanders fails to identify any similarly situated individual who was treated differently. To be "similarly situated," the individual must be like Sanders in "all relevant respects." *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in *all* relevant respects alike." (emphasis added)). Here, a significant aspect of Sanders's position is that the recording at issue was the subject of media inquiries. Thus, Sanders must show that Defendants have refused similar media inquiries in the past. Although the record does indicate that Defendants had previously never released recordings of a DUI arrest (*see* D.N. 35-14), Sanders does not contend that Defendants have withheld such recordings in the face of media inquiries.

*Wells v. City of Grosse Pointe Farms* is instructive on this point. There, Mary Arnone was pulled over by a Gross Pointe police officer for a routine traffic stop. 581 F. App'x 469, 472 (6th Cir. Aug. 4, 2014). According to Arnone's version of events, the officer proceeded to sexually harass her. *Id*. The officer denied that any harassment occurred and instead alleged that Arnone threatened him with hostile language. *Id*. Although Arnone disputed much of the officer's account, it was undisputed that she had indeed cursed at the officer. (*Id*.) Following the incident, the officer reported to Arnone's employer that she had threatened him during the stop. *Id*. Arnone's bankruptcy estate sued the city and the police officer, alleging, among other things, a class-of-one equal protection claim arising from the officer's report to Arnone's employer. *Id*. The court dismissed the estate's claim, however, because the estate had offered "no evidence that [the officer] would treat others differently when confronting the *same* factual scenario." *Id*. at 476 (emphasis added). In other words, irrespective of the alleged sexual

7

harassment, Arnone failed to show that any other person who cursed at the officer would not also have been reported.

Sanders has likewise presented no evidence that Defendants would have acted differently when confronting the same factual scenario if Sanders were not involved. Although Sanders posits that the release was bad practice, she has pointed to no instances where Defendants refused media requests for DUI recordings. This alone supports summary judgment on Sanders's class-of-one equal protection claim. *See Bertovich v. Vill. of Valley View, Ohio*, 431 F. App'x 455, 458 (6th Cir. July 12, 2011) (affirming dismissal of the plaintiff's class-of-one claim where "[a] close examination of the factual allegations confirm[ed] that [the plaintiff] d[id] not point to any individual who was treated differently").

Second, even if Sanders had demonstrated the requisite differential treatment, her class-of-one claim would fail because she has neglected to demonstrate the lack of a rational basis for Defendants' actions. "Where, as here, no suspect class or fundamental right is implicated, governmental action subject to equal protection scrutiny under the rational basis test must be sustained if *any* conceivable basis rationally supports it." *TriHealth, Inc. v. Board of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 790 (6th Cir. 2005) (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–314 (1993)). A plaintiff may demonstrate that governmental action lacks a rational basis in one of two ways: (i) by negating "every conceivable basis which might support the government action" or (ii) by "demonstrat[ing] that the challenged government action was motivated by animus or ill-will." *Klimik v. Kent Cty. Sheriff's Dep't*, 91 F. App'x 396, 400 (6th Cir. Jan. 30, 2004). Ultimately, the government "has no obligation to produce evidence to sustain the rationality of its action; its choice is presumptively valid and 'may be based on

rational speculation unsupported by evidence or empirical data.'" *TriHealth, Inc.*, 430 F.3d at 790 (citing *Beach Commc'ns*, 508 U.S. at 315).

Sanders has failed to negate every conceivable basis which might support Defendants' action. As explained above, Defendants contend that Cruse, Hornback, and Johnson proceeded under the assumption that release of the recording was mandated by Kentucky's Open-Records Act. (*See, e.g.*, D.N. 35-14, PageID # 214–16) The fact that they were mistaken as to the applicable law does not mitigate the rationality of their decision. To be rational, the government action need only be supported by "rational speculation." *TriHealth, Inc.*, 430 F.3d at 790. Sanders has not demonstrated that the officials' speculation was irrational. At most, Sanders has shown that releasing the recording was unwise and ultimately not supported by Kentucky law. But given the absence of specific Hodgenville policies on the issue of media requests for DUI recordings, and the alleged lack of training on the topic, the Court cannot say that Cruse, Hornback, and Johnson's speculation was "irrational." *Levin v. City of Palm Beach Gardens City Attorney's Office ex rel. Tatum*, 303 F. App'x 847, 851 (11th Cir. 2008) (finding that a mistaken application of a law did not violate the equal protection clause); *Gibb v. City of Friendswood*, No. 07–329, 2007 WL 4326739, at *4 (S.D. Tex. Dec. 6, 2007) (explaining that "a mistake by the City official in applying [the law] is simply not a violation of the Fourteenth Amendment" because "negligence rarely rises to the level of a constitutional violation").

Nor has Sanders demonstrated that Defendants' action was motivated by animus or ill will. To succeed on this prong, Sanders "must prove that the challenged government actions were motivated by personal malice *unrelated* to the defendant's official duties." *Klimik*, 91 F. App'x at 401 (emphasis added). Courts within this circuit have interpreted *Klimik* to mean that "the government official must have some pre-existing bias or motive to retaliate against the

9

plaintiff." *Slusher v. Delhi Tp., Ohio*, No. 1:08–CV–273, 2009 WL 2145608, at *7 (S.D. Ohio July 14, 2009). In *Slusher*, the plaintiff's class-of-one theory failed because "to the extent that there [existed] any evidence of animus, it arose in the context of the [police] officer's official interactions with [the plaintiff]." *Id*. at *8. Moreover, Sanders must show that the animus was directed at her. *See Ziss Bros. Constr. Co., Inc. v. City of Independence, Ohio*, 439 F. App'x 467, 479 (6th Cir. Aug. 29, 2011) (finding that the plaintiff's class-of-one claim failed where it alleged animus towards its proposed construction plan rather than animus towards the plaintiff itself). Thus, political animus towards Sanders's husband will not suffice.

Sanders fails to point to any evidence of animus by Defendants outside the context of their official interactions with her. Sanders cites testimony from peer officers that indicate Johnson should have known that it was bad practice to release an arrest recording shortly after the arrest. (*See* D.N. 44, PageID # 300–01 (citing D.N. 35-14, PageID # 190–91, 202–04)) She also cites testimony indicating that Johnson should have been aware of the exception to the Open-Records Act for recordings of DUI arrests. (*See id*., PageID # 306 (citing D.N. 35-14, PageID # 198–99)) However, Sanders does not affirmatively demonstrate that Johnson knew of the exception or that his actions stemmed from ill will towards Sanders.[3] Indeed, she argues elsewhere that Hodgenville did not have policies in place regarding the release of DUI recordings. (D.N. 44, PageID # 319) In such an instance, Johnson's release would likely be due to his lack of training on the issue rather than ill will.[4] Moreover, any animus on the part of

---

[3] If anything, the cited testimony from Johnson's peer officers indicates that he did not release the recording in bad faith. Although the officers contend that the release was a "bad idea" and generally against best practices (D.N. 35-14, PageID #190–191, 203), none of the officers insinuate that Johnson released the recording maliciously.

[4] In support of her § 1983 failure-to-train claim, Sanders states in her complaint that "Defendant Johnson has admitted under oath that he was unaware of the law prohibiting the wrongful release of police video recordings." (D.N. 1-2, PageID # 10). Ultimately, Sanders cannot have it both

Johnson towards Sanders arose because of his department's official interaction with her on the night at issue. Sanders has simply failed to point to any evidence demonstrating that Cruse, Hornback, or Johnson had an existing animus towards her *prior to* the night at issue. *See Slusher*, 2009 WL 2145608 at *7–8.

For the foregoing reasons, Sanders's § 1983 claim may not proceed as a class-of-one equal protection claim.

**b. Due Process Clause**

The 14th Amendment's Due Process Clause contains both a procedural and a substantive component. "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005). Procedural due process is not at issue here. Sanders contends that Defendants' release of the recording was wrongful in and of itself, not that Defendants merely failed to follow the proper procedures in releasing the video. "Substantive due process is the doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (internal alteration and quotation omitted). Such rights include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 499 (6th Cir. 2007) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

More generally, substantive due process includes a right to privacy. In fact, the Supreme Court has identified two types of interests protected by the right. "One is the interest in

---

ways. She may not in one instance cite this evidence to support her overarching failure-to-train claim while elsewhere insinuating that the release was done in bad faith.

11

'independence in making certain kinds of important decisions.'" *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (quoting *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977)). "The other type of privacy interest applicable to individuals is the 'interest in avoiding disclosure of personal matters.'" *Id*. (quoting *Whalen*, 429 U.S. at 599, 603–04). The Sixth Circuit has interpreted the second prong narrowly, however: "A plaintiff alleging a violation of her right to informational privacy must therefore demonstrate that the interest at stake relates to those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty." *Id*. (internal quotations omitted). Thus, the Sixth Circuit has recognized an informational-privacy interest in only two instances: (i) "where the release of personal information could lead to bodily harm," *see Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), or (ii) "where the information released was of a sexual, personal, and humiliating nature," *see Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998). *Id*. at 440–41.

At issue here is the second privacy interest—specifically, whether Sanders has demonstrated that Defendants released information of a "sexual, personal, and humiliating nature." Although the recording in question contained embarrassing information, the information contained in the recording is not of a "sexual, personal, and humiliating" nature as that phrase has been interpreted by courts within this circuit. In *Bloch*, for example, the defendant in his role as sheriff released to the media "highly personal and extremely humiliating details" concerning the rape to which the plaintiff had been subjected. 156 F.3d at 676. The court concluded that the plaintiff had stated a cognizable Fourteenth Amendment injury because "sexuality and choices about sex, in turn, are interests of an intimate nature which define significant portions of our personhood." *Id*. at 685.

The recording here is far less personal that the facts divulged in *Bloch*. Although Sanders contends that the recording captured her in a "state of undress" (D.N. 1-2, PageID # 7), the video depicts Sanders dressed in a white housecoat, which rests slightly above knee level, and a pair of tennis shoes. The parties agree that Sanders wore a nightgown underneath the housecoat, but that piece of clothing is not readily apparent from the video. Sanders's claim that the recording captured her in a "state of undress" is also questionable since Sam Sanders testified that Deeann occasionally wears the housecoat outside to let out the dog or retrieve the mail. (D.N. 47, PageID # 598) In short, nothing in the video of Sanders is so humiliating as to constitute a constitutional violation under *Bloch*.

*Jones v. Lacey* is also persuasive. At issue in *Jones* was the defendants' release to the public of a dashcam video that contained the plaintiff's revelation that she was HIV positive. 108 F. Supp. 3d 573, 580 (E.D. Mich. 2015). The court first assumed, without deciding, that there is a constitutional privacy interest in an individual's HIV status. *Id*. at 583 (citing *Moore v. Prevo*, 379 F. App'x 425, 428 (6th Cir. 2010)). Nevertheless, the court held that the plaintiff could not succeed on her Fourteenth Amendment claim because she had previously disclosed her HIV status to a subset of the community and thus her status was already part of the public domain. *Id*. at 585. Here, Sanders released details of the incident to two important public officials prior to the video's release (i.e., Hodgenville's former mayor Terry Cruse and the LaRue County District Court Judge). (D.N. 35-1, PageID # 122) And the events at issue occurred on a public road, and at least one vehicle drove by during Sam Sanders's arrest. (D.N. 47, PageID # 600) Moreover, it is undisputed that Sanders initiated the contact herself. (*See* D.N. 46, PageID # 490) No one forced her to walk to a public road late at night wearing a housecoat; she did so on her own accord. The fact that several community members knew about

Sam Sanders's arrest prior to the recording's release and the fact that Deeann Sanders initiated the contact that underlies this action weigh in favor of summary judgment. *See Jones*, 108 F. Supp. 3d at 585.

Also instructive is *Cawood v. Haggard*. In *Cawood*, law enforcement investigated allegations that the plaintiff asked his clients to engage in sexual activities in exchange for a reduction in their legal fees. 327 F. Supp. 2d 863, 879 (E.D. Tenn. 2004). As part of the investigation, law enforcement obtained a surveillance videotape depicting the plaintiff's sexual activities with one of his clients. *Id*. The plaintiff alleged that the defendants played the videotape to noninvestigating officers at the police station in violation of his due process rights. The court held, however, that the defendants' actions did not rise to the level of a constitutional violation. *Id*. at 880. The court reasoned that because the video contained not only the plaintiff's private sexual conduct but also his alleged criminal act in trading sexual favors for a reduction in legal fees, and because the videotape would eventually be made public through its use at the plaintiff's criminal trial, the plaintiff had failed to show that the defendants violated his right to privacy. *Id.*

The recording here contained not only Sanders's interaction with the arresting officers but also evidence of Sam Sanders's criminal act. Moreover, the embarrassing nature of the video is mitigated by the simple fact that Deeann Sanders is not the individual arrested in the video. At most, the recording captures her ill-advised confrontation with the arresting officers. Persuasive authority indicates that such footage does not implicate due process concerns. In *Dupont v. City of Biddeford*, the defendants released a bodycam video of the plaintiff recorded during a traffic stop. No. 2:11–cv–00209–JAW, 2011 WL 5075642, at *1 (D. Me. Oct. 24, 2011). The video captured the plaintiff acting "difficult" during the encounter with police officers. *Id*. In deciding

14

whether the plaintiff had stated a viable Fourteenth Amendment claim, the court found that the video did not contain "highly personal or intimate information" as that phrase has been interpreted by the Supreme Court and circuit courts. *Id*. at *3 (citing *Paul v. Davis*, 424 U.S. 693, 701(1976) ("The words 'liberty' and 'property' as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law.")), *report and recommendation adopted*, 2012 WL 441255 (D. Me. Feb. 10, 2012).

Ultimately, while Sanders may understandably be embarrassed about her conduct on the night of her husband's arrest, "nothing about [her] . . . rude . . . behavior in a public place involves matters of a highly personal or sensitive nature to merit constitutional protection." *Olivera v. Vizzusi*, No. CIV. 2:10–1747 WBS GGH, 2011 WL 1253887, at *5 (E.D. Cal. Mar. 31, 2011). "[T]he Constitution simply does not provide a free-standing right not to have the world know bad things about you." *Id*. (internal quotations omitted). In short, the Fourteenth Amendment does not provide special protection against the recordings like the one at issue here. *See Paul*, 424 U.S. at 701.

For the foregoing reasons, Sanders's § 1983 claim may not proceed as a due process claim. Because Sanders has failed to establish that Defendants violated her constitutional rights, her § 1983 claim fails as a matter of law. *See Christy*, 932 F.2d at 504.

### c. Supplemental Jurisdiction

Having disposed of the only basis for subject-matter jurisdiction, the Court declines to exercise supplemental jurisdiction over Sanders's remaining state-law claims. Pursuant to 28 U.S.C. § 1367(c)(3), this Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction." In the Sixth

15

Circuit, there is "a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed"; the Court should retain jurisdiction "only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [the] concern over needlessly deciding state law issues." *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. May 19, 2011) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)).

The discretion to decline supplemental jurisdiction over state-law claims extends to all stages of litigation, including summary judgment. *See Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011) (citing *Nails v. Riggs*, 195 F. App'x 303, 313 (6th Cir. 2006)). Indeed, the fact that the parties have engaged in extensive discovery does not bar this Court from declining to adjudicate state-law claims. *See Jeung v. McKrow*, 264 F. Supp. 2d 557 (E.D. Mich. 2003); *Practice Perfect, Inc. v. Hamilton Cty. Pharm. Ass'n*, 732 F. Supp. 798 (S.D. Ohio 1989). In declining to exercise supplemental jurisdiction, the Court may either dismiss the state-law claims or remand them. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir. 2000). "In exercising that discretion, the Court may consider the convenience of the parties and expeditiousness in resolving the case." *Jeung*, 264 F. Supp. 2d at 572 (citing *Long*, 201 F.3d at 761).

Here, the Court concludes that remanding Sanders's state-law claims to LaRue County Circuit Court is the appropriate disposition. The parties have conducted extensive discovery in this matter; dismissing the claims outright is not in the interest of judicial economy.[5]

---

[5] In a footnote in her response brief, Sanders moves to strike Johnson's answer and proffered defenses in this case for his refusal to sit for a deposition. (D.N. 44, PageID # 302) The Court declines to consider a "motion" made in a footnote, particularly one seeking such a remedy.

## IV. Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Defendants' motion for summary judgment (D.N. 35) is **GRANTED** in part. Sanders's § 1983 claim is **DISMISSED** with prejudice.

(2) Sanders's remaining state-law claims are **REMANDED** to LaRue County Circuit Court in accordance with 28 U.S.C. § 1367(c)(3).

(3) This matter is **DISMISSED** and **STRICKEN** from the Court's docket.